# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CANDIE MOORE-RADCLIFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-17-1173-STE |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for supplemental security income and disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

## I.   PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's applications for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 18-31). The

Appeals Council denied Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her amended onset date of July 12, 2012. (TR. 20). At step two, the ALJ determined Ms. Moore-Radcliff had the following severe impairments: asthma; obesity; fibromyalgia; and systemic lupus erythematosus. (TR. 20). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 22).

At step four, the ALJ concluded that Ms. Moore-Radcliff retained the residual functional capacity (RFC) to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(b) and 416.967(a) except the claimant is able to lift, carry, push, and/or pull 10 pounds occasionally and less than 10 pounds frequently; sit for 6 hours of an 8 hour workday; stand and walk for 2 hours of an 8 hour workday; can never climb ladders, ropes, or scaffolds; and should work in a climate controlled environment with no concentrated exposure to fumes, odors, dusts, and gases.

(TR. 23-24). With this RFC, the ALJ concluded that Plaintiff was able to perform her past relevant work as a bookkeeper and a secretary. (TR. 28). Even though the ALJ concluded that Plaintiff could perform her past relevant work, she made additional findings at step five. There, the ALJ presented several limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff

could perform. (TR. 62-63). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles. (TR. 64-65). The ALJ adopted the testimony of the VE and concluded that in the alternative, at step five, Ms. Moore-Radcliff was not disabled based on her ability to perform the identified jobs. (TR. 30).

## III. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## IV. ISSUES PRESENTED

On appeal, Plaintiff alleges that the RFC lacked substantial evidence because the ALJ: (1) improperly relied on opinions from two State Agency physicians, (2) improperly discounted opinions from Plaintiff's treating physician, and (3) ignored probative evidence.

### A. The Medical Evidence

The medical record in this case consists of evidence from: (1) non-examining State Agency reviewing physicians, (2) a one-time consultative examination from Dr.

John Saidi, and (3) progress notes and Medical Source Statements from Plaintiff's treating physician, Dr. Craig Carson.

Initially and on reconsideration, State Agency physicians opined that Plaintiff could perform "light" work, consisting of the ability to occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, and sit, stand, and walk for 6 hours during an 8-hour workday. (TR. 75-76, 82-83, 93-94, 102-103). Both physicians had based their opinions on: (1) Plaintiff's initial consultation with Dr. Carson and (2) Dr. Saidi's one-time consultative examination. *See* TR. 75-76, 82-83, 93-94, 102-103.

On September 3, 2013 Dr. Saidi performed extensive range of motion testing in Plaintiff's back, hips, knees, ankles, lumbar and cervical spines, hands, and wrists. (TR. 293-296). Dr. Saidi noted: "normal" findings with Plaintiff's gait, handgrip strength, cervical spine, hips, knees, ankles, shoulders, elbow, wrists, fingers and thumbs. (TR. 298-299). Dr. Saidi also noted: (1) decreased lumbar flexion and rotation with some pain and stiffness and (2) "motor strength" of 4/5 in Plaintiff's biceps, triceps, quadriceps, and hamstrings. (TR. 298-299).

Dr. Carson treated Ms. Moore-Radcliff for systemic lupus from July 2012 through December 2015. *See* TR. 289-291, 304-316, 318-319, 322-323, 324-352. On May 20, 2014 and October 30, 2015, Dr. Carson prepared Medical Source Statements documenting Ms. Moore-Radcliff's physical capabilities. (TR. 318-319, 322-323). In both reports, Dr. Carson stated, in part, that Plaintiff:

- Could frequently and/or occasionally lift or carry less than 10 pounds,
- Could sit, stand, or walk for less than 2 hours during an 8-hour workday,
- Suffered from arthritis which limited her upper and lower extremities,

4

- Could never climb stairs/ramps/ladders/ropes/scaffolds, balance, kneel, crouch, crawl,

- Could occasionally stoop,

- Could reach, handle, finger, and feel "less than occasionally," and

- Should avoid exposure to various environmental factors.

(TR. 318-319, 322-323). Additionally, in the October 2015 statement, Dr. Carson opined that Plaintiff: (1) should periodically alternate sitting and standing and (2) was unable to "perform work activity" for more than four hours (TR. 322).

### B. The RFC Lacks Substantial Evidence

As stated, the ALJ concluded that Ms. Moore-Radcliff retained the RFC to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(b) and 416.967(a) except the claimant is able to lift, carry, push, and/or pull 10 pounds occasionally and less than 10 pounds frequently; sit for 6 hours of an 8 hour workday; stand and walk for 2 hours of an 8 hour workday; can never climb ladders, ropes, or scaffolds; and should work in a climate controlled environment with no concentrated exposure to fumes, odors, dusts, and gases.

(TR. 24). Plaintiff contends that the RFC lacked substantial evidence because the ALJ: (1) improperly relied on the State Agency physicians' opinions, (2) improperly evaluated Dr. Carson's opinions, and (3) ignored probative evidence. (ECF No. 19). The Court agrees.

To determine whether the RFC is supported by substantial evidence, the Court must examine the evidence on which it is based. As stated, the evidence in this case is limited to three sources: (1) the State Agency physicians' opinions, (2) Dr. Saidi's one-time examining opinion, and (3) opinions from treating physician Dr. Carson. The ALJ discussed Dr. Saidi's opinion and noted that the physician had given no definitive

diagnosis. (TR. 25). Indeed, as discussed, Dr. Saidi rendered essentially "normal" findings. *See supra*. The ALJ did not appear to rely on Dr. Saidi's opinion in evaluating the RFC, and Plaintiff does not argue otherwise. *See* ECF No. 19. Thus, the only opinions which remain to support the RFC are those from the State Agency physicians and Dr. Carson.

As discussed, the State Agency physicians had assigned an RFC for "light" work—including the ability to occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, and sit, stand, and walk for 6 hours during an 8-hour workday. (TR. 75-76, 82-83, 93-94, 102-103). The ALJ assigned "some weight" to these opinions but noted a more restrictive RFC—sedentary with some additional restrictions—rather than the "light" exertional level as the physicians had opined. *Compare* TR. 27 *with* TR. 75-76, 82-83, 93-94, 102-103. According to the ALJ, she had prescribed the more limited RFC "due to consideration of the combination of impairments, including the consideration of obesity." (TR. 27). Ultimately, the ALJ relied solely on the State Agency opinions to support the RFC. *See* TR. 28 ("In sum, the above residual functional capacity assessment is supported by the opinion of the State agency reviewing physicians and the State agency reviewing psychologists.").

Regarding Dr. Carson, the ALJ:

- gave "little weight" to the opinions involving Plaintiff's: (1) arthritic-based limitations which limited the use of her upper and lower extremities and (2) abilities to sit, stand and/or walk for less than 2 hours during an 8-hour workday;[1] and

---

[1] Although the ALJ afforded "little weight" to some of the opinions, the ALJ effectively rejected them, along with the opinions she ignored. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (according treating physician's opinion "little" weight, which was tantamount to a rejection of the opinion).

- failed to discuss the limitations involving Plaintiff's: (1) ability to only occasionally stoop and lift or carry less than 10 pounds, (2) inability to balance, kneel, crouch, or crawl, and (3) ability to "less than occasionally" reach, handle, finger, and feel.

(TR. 27).[2] Regarding the opinions she afforded "little weight," the ALJ explained:

> Dr. Carson opined that the claimant could stand, walk, or sit for less than 2 hours out of an 8 hour workday and would be limited in her use of both upper and lower extremities, yet this was inconsistent with her ability to home-school four children and teach judo. The claimant's gait was normal. She was noted throughout Dr. Carson's progress notes to walk for exercise. Dr. Carson's opinion was not well-supported and was inconsistent with substantial evidence in the record; therefore the Administrative Law Judge assigns little weight.

(TR. 27). The ALJ made no findings about Dr. Carson's opinions regarding Ms. Moore-Radcliff's: (1) ability to only occasionally stoop and lift or carry less than 10 pounds, (2) inability to balance, kneel, crouch, or crawl, and (3) ability to "less than occasionally" reach, handle, finger, and feel.

Ms. Moore-Radcliff argues that the ALJ's rationales for discounting a portion of Dr. Carson's opinions lacked substantial evidence. First, Plaintiff argues that the ALJ mischaracterized the evidence regarding Plaintiff's ability to teach judo and home-school her children, and therefore improperly relied on the same. According to Plaintiff, the record contained no evidence regarding the frequency or duration of judo and home-schooling which would support the ALJ's reliance on these activities as a basis to discount Dr. Carson's opinions. Additionally, Ms. Moore-Radcliff maintains that other

---

[2] The RFC was consistent with Dr. Carson's opinions regarding Plaintiff's abilities to: (1) frequently lift, (2) climb, and (3) work in a climate-controlled environment. *See* TR. 23-24.

evidence provided a more detailed account of Plaintiff's activities which was not inconsistent with Dr. Carson's opinions. The Court agrees.

Function reports from Ms. Moore-Radcliff and her husband indicate that Plaintiff home schools her four children. *See* TR. 225, 241. In the decision, the ALJ cited the hearing testimony to state that Plaintiff "was engaged in full-time homeschooling of four children." (TR. 25). But the Court finds no mention of home-schooling at the hearing, and nothing in the record which indicates that she had engaged in the activity "full-time." record. Furthermore, the record contains one notation, in December 2014 which states Plaintiff "helps teach Judo." (TR. 334). But the record does not indicate what Ms. Moore-Radcliff did to "help teach[] Judo" or how often she engaged in the activity.

In describing her daily activities, Plaintiff stated that she moved at a slow pace and needed frequent breaks. (TR. 225). She described feeling weak and exhausted upon waking due to her lupus. (TR. 225). Plaintiff stated that sitting or standing too long was laborious and caused "much pain." (TR. 225). In describing taking care of her children, Plaintiff stated "I must keep up the best I can. It is difficult, but I am determined. I rest and work very slow. VERY SLOW." (TR. 227). And at the hearing, Plaintiff stated that her lupus affected her joints, affected the ability to use her hands, caused her difficulty breathing, required her to take frequent breaks, and sometimes caused her to sleep for 13-15 hours, or not at all. (TR. 56-59).

An ALJ may not rely on a claimant's daily activities as substantial evidence to support an RFC. *See Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993) ("evidence that a claimant engages in limited activities . . . does not establish that the

claimant can engage in light or sedentary work activity."). Furthermore, in light of Plaintiff's testimony and her description of her daily life, the Court concludes that the ALJ mischaracterized and ultimately improperly relied on Ms. Moore-Radcliff's ability to "home-school her children" and "teach judo" in rejecting Dr. Carson's opinions. *See Talbot v. Heckler*, 814 F.2d 1456, 1464 (10th Cir. 1987) (ALJ improperly relied on a mischaracterization of plaintiff's daily activities to support the RFC determination).

Next, the ALJ discounted Dr. Carson's opinions because Plaintiff's gait was "normal" and that she had reported walking for exercise. (TR. 27). But these findings are not necessarily inconsistent with Dr. Carson's opinions. The physician did not opine that Plaintiff had difficulty ambulating or could not walk at all, only that she was limited to doing so for less than 2 hours during an 8-hour workday. (TR. 318, 322).

Finally, the ALJ rejected Dr. Carson's opinions by stating: "Dr. Carson's opinion was not well-supported and was inconsistent with substantial evidence in the record." (TR. 27). But other than the rationales which the Court has already deemed insufficient, the ALJ has failed to state how or why she believed the physician's opinions were not well supported or inconsistent with other evidence in the record. The lack of explanation renders the ALJ's rationales legally insufficient. *See Allman v. Colvin*, 813 F.3d at 1332 ("[t]he reasons must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reason for that weight."); *Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004) (noting that the ALJ's rejection of a doctor's opinion as "inconsistent with the overall case record," was insufficient because the ALJ did not "specifically

9

highlight those portions of the record with which [the physician's] opinion was allegedly inconsistent").

If the ALJ rejects an opinion from a treating physician completely, she must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted). As discussed, the ALJ failed to provide legitimate rationales for discounting the opinions of Dr. Carson. However, the RFC can still be upheld as supported by substantial evidence if it finds support in the remaining evidence—the opinions of the State Agency physicians. For two reasons, the Court concludes that the RFC cannot be upheld.

First, in relying on the State Agency physicians' opinions, the ALJ incorrectly stated that the physicians "had the opportunity to review the longitudinal record of treatment." (TR. 27). If that rationale had been accurate, perhaps reliance on the State Agency physicians' opinions would have been appropriate. *See* SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources. . . if the State agency medical or psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.")

However, in this case, the Agency physicians themselves noted that they had reviewed only two records in support of their findings: (1) Plaintiff's initial consultation examination with Dr. Carson in July 2012 and (2) the consultative examination in

10

September 2013. *See* 75-76, 82-83, 93-94, 12-103. The State Agency physicians had not reviewed the bulk of the medical evidence, including over two years of records from Dr. Carson and both of his Medical Source Statements. Thus, the ALJ's statement regarding the Agency physicians' "longitudinal" review is an insufficient basis on which to rely on those opinions.

Second, the Court is unable to discern how, exactly, the State Agency physicians' opinions would support the RFC. The ALJ herself essentially discounted the physicians' opinions that the Plaintiff could perform "light" work, by noting the same but then stating that the "combination of impairments" and Plaintiff's obesity rendered a more restrictive, sedentary RFC. *See* TR. 27. In light of the alteration, the Court can find no basis for the RFC in the Agency opinions.

Absent a legitimate reason, the State Agency physicians' opinions should not have been given more weight over Dr. Carson's opinions. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all."). Here, as stated, the ALJ has failed to provide any such reason for doing so, nor do the opinions themselves constitute substantial evidence to support the RFC. Accordingly, remand is warranted.

**ORDER**

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the

parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on May 18, 2018.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE